GULF, C. & S. F. RY. CO. v. RIORDAN.
(No. 7860.)

(Court of Civil Appeals of Texas. Ft. Worth. Feb. 21, 1914. Rehearing Denied March 28, 1914.)

1. MASTER AND SERVANT (§ 286*) — ACTIONS FOR INJURIES—QUESTIONS FOR JURY.

In a railroad engineer's action for injuries caused by slipping on the running board, evidence that there was water, dirt, and grease on the running board before the engine was taken to the shops shortly before the accident, and that it was the duty of the employés in the shops to remove oil from the running board, made a question for the jury as to the company's negligence in permitting oil to be on the running board at the time of the accident.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050; Dec. Dig. § 286.*]

2. TRIAL (§ 253*)—ACTIONS FOR PERSONAL INJURIES—INSTRUCTIONS—IGNORING ISSUES.

In a railway engineer's action for injuries caused by slipping on the running board, where plaintiff alleged negligence in permitting oil to be on the running board and in failing to install an equipment for opening the blow-off cock from the cab without going on the running board, an instruction that, if plaintiff was negligent in failing to discover the oil on the running board before he slipped and fell, he could not recover was properly refused, as it would have excluded a recovery upon the other issue of negligence in the petition.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 613–623; Dec. Dig. § 253.*]

3. MASTER AND SERVANT (§ 228*)—LIABILITY FOR INJURIES — CONTRIBUTORY NEGLIGENCE.

Under Rev. St. 1911, art. 6649, providing that, in actions brought under the provisions of the preceding articles for personal injuries to a railroad employé, his negligence shall not bar a recovery, but that the damages shall be diminished in proportion to the negligence attributable to him, the negligence of a railway engineer in failing to discover oil upon the running board before he slipped and fell, co-operating with the company's negligence in permitting the oil to be on the running board, was not a complete bar to a recovery, and an instruction that if he was negligent he could not recover was properly refused.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 670, 671; Dec. Dig. § 228.*]

4. MASTER AND SERVANT (§ 278*) — ACTIONS FOR INJURIES—SUFFICIENCY OF EVIDENCE.

Evidence, in a railway engineer's action for injuries caused by slipping on the running board, that it was the custom of many railway companies to use engines equipped with an appliance for operating the blow-off cock from the cab without going on the running board, that such appliance could be installed at a cost not exceeding $1.50, and that plaintiff had requested the roundhouse foreman to have such equipment installed supported a finding of negligence in failing to equip the engine with such appliance, though there was evidence that many well-regulated and prudently managed railroads used engines without such equipment.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954, 956–958, 960–969, 971, 972, 977; Dec. Dig. § 278.*]

5. MASTER AND SERVANT (§ 291*) — ACTIONS FOR INJURIES—QUESTIONS FOR JURY.

In a railroad engineer's action for injuries caused by slipping on the running board, testimony that there was oil on the running board at the time of the accident, that there was no oil thereon when the engine left the roundhouse shortly before, and that, if the packing around the piston of the air pump had been in proper condition, no appreciable amount of oil would have leaked therefrom during the interval justified the submission of the issue as to a defect in the air pump, permitting oil to escape therefrom.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1133, 1134, 1136–1146; Dec. Dig. § 291.*]

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

6. MASTER AND SERVANT (§ 289*) — ACTIONS FOR INJURIES—QUESTIONS FOR JURY.

Under Rev. St. 1911, art. 6645, providing that, in actions for personal injuries to any railroad employé caused by negligence, assumed risk, where the ground of the plea is knowledge or means of the knowledge of the defect or danger, shall not be available, where the employé had an opportunity before being injured and did notify the employer within a reasonable time, where there was evidence that engines equipped for operating the blow-off cock from the cab were in common use, that such equipment could be installed at a trifling cost, and that the roundhouse foreman had promised an engineer that such equipment would be furnished, whether the engineer assumed the risk of injury in operating the blow-off cock from the running board was a question of his contributory negligence within the province of the jury, and the court properly refused to charge that the engineer assumed the risk.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1089, 1090, 1092–1132; Dec. Dig. § 289.*]

Appeal from District Court, Cooke County; C. F. Spencer, Judge.

Action by E. H. Riordan against the Gulf, Colorado & Santa Fé Railway Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Terry, Cavin & Mills, of Galveston, Garnett & Garnett, of Gainesville, and A. H. Culwell and John G. Gregg, both of Galveston, for appellant. Stuart, Bell & Moore, of Gainesville, for appellee.

DUNKLIN, J. The Gulf, Colorado & Santa Fé Railway Company has appealed from a judgment in favor of E. H. Riordan, for damages for personal injuries. This is the second appeal prosecuted to this court; the decision on the former appeal being reported in 146 S. W. 711.

While engaged as a locomotive engineer on one of appellant's trains, Riordan descended from the engine cab and went out upon the running board of the engine for the purpose of opening the blow-off cock to let out sediment accumulating in the boiler, and thus to leave clean water in the boiler. A rod extended from the blow-off cock up to the running board, and the cock was opened by using a steel bar as a lever. In order to reach this bar, it was necessary to pass around an air pump which extended above the running board. When plaintiff stepped around this air pump, his foot slipped from the running board, causing him to fall, and thereby to sustain injuries. He alleged that grease and oil had accumulated upon the running board, and that this caused his foot to slip; that the oil escaped from the air pump as a result of improper packing between the cylinder and the piston of the pump; that the railroad company was guilty of negligence in furnishing him the engine in that condition; that the company was guilty of negligence further in not installing upon the engine an equipment for opening the blow-off cock from the cab of the engine, thus obviating the necessity

of going upon the running board for that purpose. He further alleged that prior to his injury he had requested the foreman of appellant's roundhouse at Gainesville to provide said engine with such equipment, and that such agent had promised him that his request would be complied with. In the court's charge to the jury plaintiff's right to recover was predicated upon those allegations of negligence. The evidence further shows that, a few days prior to the date of the accident, plaintiff had operated the engine in question, but that it had been sent to appellant's roundhouse in Gainesville for repairs, from whence it was taken to Ardmore, and plaintiff's injury occurred on the night next succeeding the day it was taken out of the shop. Plaintiff resumed charge of the engine at Ardmore on the night of his injury, other employés having operated it from the time it left the roundhouse until then, and had been operating it only for an hour or so when the injury occurred. The only use made of the engine from the time it left the shop until plaintiff took charge of it was to run from Gainesville to Ardmore, a distance of about 40 miles, and some switching done in the yards after its arrival at Ardmore.

[1] The court submitted both issues of negligence alleged in the pleadings and referred to above. Appellant insists that the evidence is insufficient to support a finding of negligence in permitting the presence of oil on the running board at the time plaintiff was put in charge of the engine. On the former appeal one of the reasons for reversal was the lack of testimony upon that issue, but the same cannot be said of the record now before us: E. D. Hudgins, one of defendant's employés, who was serving as a brakeman upon the engine in question shortly before it was taken to the shops, testified that he noticed a little water, dirt, and grease mixed together on the running board near the air pump. He said that he noticed this when he went out on the running board to operate the blow-off cock. It was further shown by the testimony of appellant's officials in charge of the roundhouse that it was the duty of employés there engaged to make an inspection of engines sent to the shop, and that if oil was discovered upon the running board to remove the same.

[2, 3] There was no error in refusing appellant's requested special charge No. 7, which was in effect that, if plaintiff was guilty of negligence in failing to discover the presence of the oil upon the running board before he slipped and fell, he could not recover. Such an instruction, if given, would have excluded any right of recovery upon the other issue of negligence alleged in the plaintiff's petition; furthermore, under Revised Statutes 1911, art. 6649, the negligence of the plaintiff in that respect, co-operating with the negligence of the defendant, would not be a complete bar to a recovery.

---

GILLESPIE v. STATE

[4] By several assignments appellant insists that there was no evidence to sustain a finding of negligence on the part of the defendant in failing to equip the engine with an appliance for operating the blow-off cock from the cab of the engine, thus relieving the engineer of the duty to go out upon the running board to operate it. While appellant's evidence tended to show that many well-regulated and prudently managed railroads of Texas used engines without such equipment, yet there was further testimony tending to show a custom of many railway companies to the contrary. Furthermore, there was testimony which seemed to be undisputed that the cost of installing such an appliance upon the engine in question would not have exceeded one dollar and a half, and that prior to the accident plaintiff requested C. P. Barnhill, foreman of defendant's roundhouse at Gainesville, to have such equipment installed on the engine, and that Mr. Barnhill promised that his request would be complied with.

Error has been assigned to an instruction by the court that, if plaintiff requested C. P. Barnhill, foreman of appellant's roundhouse at Gainesville, to install the equipment, then the plea that plaintiff had assumed the risk would not be availing. The ground upon which this charge is challenged is the contention that the evidence showed without controversy that practically all well-regulated and prudently managed railway companies in Texas operated engines without such equipment, and that there was no law requiring engines to be so equipped. This assignment must be overruled, as two or three witnesses testified that it was customary with some railway companies to so equip the engines as to enable the blow-off cock to be operated from the cab of the engine.

[5] It is also insisted that there was no evidence authorizing the submission of the issue of a defect in the air pump which permitted the oil to escape therefrom to the running board. This contention must be overruled for the following reasons: Plaintiff testified that there was oil on the running board at the time of his injury; the testimony of some of appellant's witnesses tended to show that there was none on the running board at the time it left the roundhouse at Gainesville for Ardmore. Other witnesses testified in effect that, if the packing around the piston of the air pump was in proper condition, no appreciable amount of oil would have leaked therefrom from the time the engine left the roundhouse at Gainesville until the time of the accident.

[6] Complaint is made of the refusal of appellant's requested charge No. 3, which was in effect a peremptory instruction that plaintiff assumed the risk and danger of the injury in so far as it was necessary for him to operate the blow-off cock from the running board instead of from the cab. The reason assigned for the refusal of this instruction is substantially that the engine in question was not designed for the operation of the blow-off cock from the cab; that it was proven beyond controversy that engines so equipped were largely in use upon other well-regulated and prudently managed railroads, and hence the defendant could not be charged with negligence in furnishing to plaintiff a locomotive of that make and design. A sufficient answer to this is the testimony referred to, to the effect that engines equipped for operating the blow-off cock from the cab were in common use; that at a trifling cost such equipment could have been installed upon the engine in question; and that the foreman of the roundhouse had promised the plaintiff that such an equipment would be furnished. Furthermore, under Revised Statutes 1911, art. 6645, the question whether or not the plaintiff assumed the risk would be a question of his contributory negligence vel non, a decision of which was the province of the jury and not that of the court.

The judgment is affirmed.